IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

PAMELA MOSES,

      Plaintiff,

vs.                            No. 16-2253-JDT-dkv

SHELBY COUNTY GOVERNMENT,
ALLIED BARTON, BRYCE PHILLIPS,
MAYOR MARK LUTTRELL,
SHERIFF BILL OLDHAM, and
DEBRA FESSENDEN,

      Defendants.

---

REPORT AND RECOMMENDATION FOR *SUA SPONTE* DISMISSAL

---

On April 18, 2016, the plaintiff, Pamela Moses ("Moses"), proceeding *pro se*, filed a complaint entitled "Emergency Complaint for Declaratory Judgment and Preliminary and Permanent Injunction" naming as defendants Shelby County Government, Allied Barton, Bryce Phillips, Mayor Mark Luttrell, Sheriff Bill Oldham, and Debra Fessenden (collectively "the Defendants), and alleging denial of her right to access public buildings "including but not limited to courts, the Shelby County law library and public meetings, county building bathrooms without an escort." (Compl. 1, ECF No. 1.)  Moses seeks declaratory and injunctive relief, attorney fees, and costs. (*Id.* at 10.)  On April 20, 2016, the court issued an order granting Moses leave to proceed *in forma pauperis*. (ECF No. 4.)  This case has been

referred to the United States Magistrate Judge for management and for all pretrial matters for determination and/or report and recommendation as appropriate. (Admin. Order 2013-05, Apr. 29, 2013.)

For the reasons that follow, it is recommended that the court abstain from exercising jurisdiction over Moses's claims against the Shelby County Government, Mayor Mark Luttrell, Sheriff Bill Oldham, and Debra Fessenden ("Fessenden") in her official capacity (collectively "the County Defendants") and Allied Barton, or, in the alternative, that Moses's claims against the these defendants be dismissed *sua sponte* for failure to state a claim. It is further recommended that Moses's claims against Bryce Phillips ("Phillips") and Fessenden in her personal capacity be dismissed *sua sponte* for failure to state a claim.

I. PROPOSED FINDINGS OF FACT

Although it is not entirely clear what causes of action Moses is pursuing in this case, Moses does reference 42 U.S.C. § 1983 as a basis for jurisdiction in this case. (Compl. 4, ECF No. 1.) Although it is the only time in her 10-page complaint that she references the statute itself, the court will assume Moses is bringing this lawsuit pursuant to 42 U.S.C. § 1983 for violations of her constitutional rights.

In her complaint, Moses alleges that "the unlawful and unconstitutional actions of the Defendants . . . began when Shelby County [Attorney] Debra Fessenden made unfounded allegations, rumors, and circulated memos that Pamela Jeanine Moses also known as P. Moses . . . was . . . a dangerous '*Sovereign Citizen*, who squats in houses.'" (Compl. 2, ECF No. 1.) Moses further states:

> Assistant District Attorney Bryce Phillips initiated bogus arrest warrants for Plaintiff's arrest stating she was entering a building unescorted. These warrants led to the SCSO [Shelby County Sheriff's Office] kicking down Plaintiff's family home. By subjecting Ms. Moses to an [sic] illegal searches and seizures, prolonged and unauthorized detention by Allied Barton upon entry of buildings, Defendants violated Plaintiff's right under the Fourth Amendment.

(*Id.*)

Moses further claims that, at some point in time not specified in her complaint, her family residence was "broken into [and] ransacked twice by defendant Shelby County Sheriff absent a valid search warrant or legal justification." (*Id.* at 4.) Moses also claims that "Defendant Shelby County Sheriff" at some point in time surveilled her residence with no legal justification, solely to intimidate and harass her, and that "Defendant Shelby County Sheriff has tampered with [her] mailbox and placed envelopes and notices inside [it]." (*Id.*)

Moses alleges that the court has jurisdiction under "28 U.S.C. § 1331 and 5 U.S.C. § 702, 42 U.S.C. section 1983."

(*Id.*)   In the body of her complaint, Moses identifies the defendants as Mark Luttrell ("Luttrell"), the mayor of Shelby County, Tennessee, who "is aware of all actions that have occurred against Plaintiff;" Allied Barton, the company that provides internal checkpoint security for all county buildings; Phillips, an assistant District Attorney for the State of Tennessee; Fessenden, legal advisor to the Shelby County Sheriff; and Shelby County Sheriff's Office ("SCSO"). (*Id.* at 4.)   The style of her complaint, however, lists the defendants as Sheriff Bill Oldham and the Shelby County Government; the SCSO is not listed as a defendant in the style of the complaint. (*Id.* at 1.)   "All defendants are sued in their official capacity," except defendant Fessenden who "is sued in her personal and official capacity." (*Id.* at 4.)

In her complaint, Moses specifically alleges that in December 2015, Allied Barton stopped her as she tried to enter the county building at 201 Poplar and told her she needed to wait for an escort to enter the building. (*Id.* at 5.)   She alleges that "[i]t was determined" that defendant Fessenden, at some point in time not specified in the complaint, "instructed different high-ranking officers to mistreat her . . . and to pass the orders to other low ranking officers." (*Id.*)

Moses further alleges that on March 8, 2016, she entered the Shelby County Juvenile Court in Memphis, TN to file

4

documents in the clerk's office and was "seized" by two SCSO deputy sheriffs to escort her. (*Id.* at 6.) Moses states she "was not free to move about without their permission" and that they were "instructed to harass Plaintiff by Debra Fessenden, the same attorney who spread untrue terrorist rumors and circulated internal memos that Plaintiff was also a sovereign citizen who squats in houses." (*Id.*)

Moses asserts seven separate "claims for relief" against all the defendants collectively: (1) violation of her First Amendment right to freedom of speech; (2) violation of the Fourth Amendment for wrongful search and seizure; (3) violation of the Fifth Amendment by depriving her of life, liberty, or property without due process; (4) violation of the Eighth Amendment by inflicting cruel and unusual punishment on her; (5) violation of the Ninth Amendment by denying and disparaging her rights; (6) violation of the Tenth Amendment for unlawful exercise of agency authority; and (7) violation of the Fourteenth Amendment for discriminatory practices. (*Id.* at 9.)

In her prayer for relief, Moses requests that the Court:

a. Declare the actions of Defendants and agents described in [the] Complaint violated Plaintiffs rights under the . . . Amendment[s] to the United States Constitution and exceeded her statutory authority;

b. Permanently enjoin Defendant, her officers, agents, servants, employees, and all persons in active concert or participation with her who receive actual notice of the injunction, from

authorizing or conducting escorts, following, harassing, the intimidating behavior of Plaintiff. This includes any SCSO coming within 50 feet of Plaintiff or family residence without legal justification or business that would justify any written or verbal communication.

c. Permanently enjoin Defendant, her officers, agents, servants, employees, and all person in active convert or participation searches of property without a valid search warrant, written notice must be given to the owner of the property and he must be present prior to any searches, and to prohibit SCSO from tampering with the mailbox.

d. Require Allied Barton to turn over their book with any photos or likeness of Plaintiff because there may be others being targeted and discriminated against because of their race, and political beliefs.

e. Award to Plaintiff his reasonable attorneys' fees, costs, and expenses of litigation; and

f. Order such other relief as the Court may deem just and proper.

(*Id.* at 10.)

On September 2, 2014, prior to filing the instant lawsuit in federal court, Moses filed a complaint in the Chancery Court of Tennessee for the Thirtieth Judicial District Memphis, Shelby County, Tennessee ("Chancery Court") entitled "Petition for a Temporary Restraining Order and Injunctive Relief Denial of Access to the Court, Public Buildings & Due Process Violations under Equal Protection Clauses." Original Complaint, Moses v. Shelby County Sheriff Bill Oldham & Officer, Shelby County Homeland Security, and Allied Barton Security Services LLC, Docket No. CH-14-1316-3 (Tenn. Ch. Ct. Sept. 2, 2014). Named as

defendants in that lawsuit were Shelby County Sheriff Bill Oldham and Officers, Shelby County Homeland Security, and Allied Barton Security Services, LLC. *Id.* at 1. In her Chancery Court complaint, Moses alleged that the defendants denied her access to county government buildings and required her to have an escort each time she enters the building. *Id.* at 1-2. While the allegations in her original Chancery Court complaint are not entirely clear, it appears that Moses is asserting claims for violations of her civil and constitutional rights. She claims that the defendants have posted her pictures throughout County buildings as if she were a terrorist and that she has been late for court appearances because of the tactics that Allied Barton implemented under the instruction of Sheriff Bill Oldham. *Id*. at 2-3. For relief, she seeks "an Injunction (sic) restraining order preventing the Defendants from prohibiting Pamela Moses from entering Shelby County Buildings and requiring an escort upon entry," "an injunction against all SCSO to not make any arbitrary contact, communication, or conversation with Petitioner," and damages "in the amount of $100,000 for each due process violation and each instance of unwanted, humiliating incidents." *Id*. at 13.

Shortly after filing the complaint in Chancery Court, Moses attempted to remove the Chancery Court case to this court, the U.S. District Court for the Western District of Tennessee.

Notice of Removal, *Moses v. Bill Oldham, et al.*, Case No. 14-02715-SHL-dkv (W.D. Tenn. Sept. 15, 2014), ECF No. 1. On March 2, 2015, this court remanded Moses's case to Chancery Court based on improper removal. Judgment, *Moses v. Bill Oldham, et al.*, Case No. 14-02715-SHL-dkv (W.D. Tenn. March 2, 2015), ECF No. 14.

On August 28, 2015, Moses filed a supplemental petition in Chancery Court in which she identified three specific incidents of alleged misconduct by the SCSO. Supplemental Petition, *Moses v. Shelby County Sheriff Bill Oldham & Officer, Shelby County Homeland Security, and Allied Barton Security Services LLC*, Docket No. CH-14-1316-3 (Tenn. Ch. Ct. Aug. 28, 2015). The first incident occurred on August 18, 2015, when she observed an unmarked truck occupied by a SCSO employee outside of her home. *Id*. at 3. The second incident occurred on August 19, 2015, when she entered the Shelby County Courthouse, 140 Adams Avenue, and was allegedly escorted by SCSO to the Chancery Court Clerk's office and surrounded by other officers who called her a Sovereign citizen causing her embarrassment and humiliation. *Id*. at 4. The third incident occurred on August 20, 2015 at the Shelby County Juvenile Court, 700 Adams Street, when a SCSO demanded to escort Moses and allegedly raised her voice to Moses causing her embarrassment and humiliation. *Id.* at 5. For relief in her amended petition, Moses sought a temporary

restraining order, preliminary and permanent injunction against the defendants for approaching her outside of 140 Adams and from making comments to her regarding her citizenship and children. *Id*. at 7.

In her supplemental petition in Chancery Court, Moses acknowledges that an order of protection was entered against her in the General Sessions Court of Shelby County Tennessee on February 9, 2015, which applies specifically to 140 Adams Avenue, and that in June 2015, the court ruled that the order would remain in place. *Id*. at 2.

On September 25, 2015, the Chancery Court held a hearing on Moses's request for injunctive relief "for her alleged denial of reasonable access to the court and other public buildings as well as her alleged harassment by various law enforcement agencies and it agents in public buildings as well as in other public places." Order Denying Injunction Relief, Moses v. Shelby County Sheriff Bill Oldham & Officer, Shelby County Homeland Security, and Allied Barton Security Services LLC, Docket No. CH-14-1316-3 (Tenn. Ch. Ct. Oct. 5, 2015). After hearing from the parties, the Chancery Court denied her motion for injunctive relief, finding as follows:

> The Court finds that the complaints as presented by Pamela Moses do not prevent her access to the Court and that the complaints, if taken to be true, do not create irreparable harm to Pamela Moses. The Court finds that over a year has passed since the complaint filed by Pamela Moses and that Pamela Moses could not

establish any irreparable harm during that period or the foreseeable future that would require injunctive relief. The Court recognizes that Pamela Moses is not happy about treatment by law enforcement and has been embarrassed by the attention that law enforcement brings to her. Her concerns do not merit or require injunctive relief and may be addressed at a later time. However, the Court must note that the scrutiny brought upon Pamela Moses is the result of alleged security threats by Pamela Moses, whether they be true or untrue, that other members of the judiciary have perceived.

*Id.* at 1-2. According to the docket sheet in the Chancery Court case, a hearing was held before Judge Weber McCraw on the Friday, May 13, 2016, and the following Order Granting Motion to Dismiss was entered by Judge McCraw:

The court has reviewed the complete court file, heard from the Clerk and Master of the Court as well as other witnesses and heard argument of the parties.

A motion to dismiss based on the running of the statute of limitations on petitioner's claims has been presented by the respondents.

It appears to the Court that pursuant to the Tennessee Rules of civil Procedure, particularly Rule 3 and 4 of such rules and other applicable provisions of law, that the petition for relief filed by the petitioner was not accompanied by any summons as required by rules at the time of filing or within one year of the filing. The complaint was filed on September 2, 2014. No process was presented for service nor was any process served within one year of the filing. Rule 3 of the Tennessee Rules of Civil Procedure provides that if process is unserved for 90 days, a plaintiff cannot rely on the filing of the original complaint to toll the statute of limitations unless the petitioner obtains issuance of new process within one year of filing suit. Again, no process was issued within one year nor has the petitioner in this matter presented proof of the service process or even the filing of process for service. Because the petitioner failed to have process issued with respect to her original

petition and did not obtain issuance of any process with respect to the original petition within one year of the original filing, by operation of Rule 3, her claims in her original petition are now barred by the one year statute of limitation provided in Tenn. Code Ann. § 28-3-104.

The petition argues that any time period should be tolled because she sought to remove the matter to federal Court or that she should be allowed to proceed based on her supplemental petition that was filed. These arguments fail. The petitioner did not obtain leave of Court to file any supplemental pleading and cannot rely upon any supplemental pleading.

The petitioner also argues theories of estoppel should apply for excusable neglect. The Court rejects that argument.

The Court finds that issuance of process was not timely requested and the claims in the original complaint are barred. Further, the Court finds that the supplemental petition should be dismissed.

Order Granting Motion to Dismiss, Moses v. Shelby County Sheriff Bill Oldham & Officer, Shelby County Homeland Security, and Allied Barton Security Services LLC, Docket No. CH-14-1316-3 (Tenn. Ch. Ct. May 13, 2016). On May 31, 2016, Moses filed a Notice of Appeal of the dismissal.

II.   PROPOSED CONCLUSIONS OF LAW

A.   28 U.S.C. § 1915(e)(2) Screening

Pursuant to Local Rule 4.1(a), service will not issue in a *pro se* case where the *pro se* plaintiff has been granted leave to proceed *in forma pauperis* until the complaint has been screened under 28 U.S.C. § 1915(e)(2). The clerk is authorized to issue

summonses to *pro se* litigants only after that review is complete and an order of the court issues.

The court is required to screen *in forma pauperis* complaints and to dismiss any complaint, or any portion thereof, if the action:

(i)     is frivolous or malicious;

(ii)    fails to state a claim on which relief may be granted; or

(iii)   seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2). Because Moses has been granted leave to proceed *in forma pauperis*, this report and recommendation will constitute the court's screening.

B.   Federal-Question Jurisdiction Under 28 U.S.C. § 1331

Moses alleges that the court has jurisdiction pursuant to 28 U.S.C. § 1331, 5 U.S.C. § 702 and 42 U.S.C. § 1983. A federal district court has federal-question jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "Whether a claim presents a federal question is determined by looking to the plaintiff's statement of his own claim." *Lexington-Fayette Urban Cnty. Gov't Civil Serv. Comm'n v. Overstreet*, 115 F. App'x 813, 816 (6th Cir. 2004)(internal quotation marks omitted). Because the court is treating this complaint as bringing a cause of action under 42 U.S.C. § 1983 to address alleged

constitutional violations, this suffices for federal question subject-matter jurisdiction.

C.   Standard of Review for Failure to State a Claim

In assessing whether Moses's complaint states a claim upon which relief may be granted, the standards under Rule 12(b)(6) of the Federal Rules of Civil Procedure, as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 678-679 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007), are applied. *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). "Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011)(quoting *Iqbal*, 556 U.S. at 681)(alteration in original). "[P]leadings that . . . are no more than conclusions[] are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief.  Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

13

"*Pro se* complaints are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (internal quotation marks omitted). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011)("[A] court cannot create a claim which [a plaintiff] has not spelled out in his pleading")(internal quotation marks omitted); *Payne v. Sec'y of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003)(affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Paynes's claim for her"); *cf. Pliler v. Ford*, 542 U.S. 225, 231 (2004)("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011)("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

D.  <u>Moses's Official Capacity Claims Against Defendants Shelby
    County Government, Mayor Mark Luttrell, Sheriff Bill
    Oldham, Allied Barton, and Debra Fessenden</u>

To bring an action under § 1983, Moses must allege that she
was deprived of a right secured by the Constitution or laws of
the United States and that such deprivation was caused by a
person acting under color of state law.  42 U.S.C. § 1983; *Fritz
v. Charter Twp. of Cornstock*, 592 F.3d 718, 722 (6th Cir. 2010).
In *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S.
658 (1978), the Supreme Court determined that a municipality is
a "person" within the meaning of section 1983 who can be sued
directly if it causes a constitutional tort through "a policy
statement, ordinance, regulation, or decision officially adopted
and promulgated by that body's officers."  *Id.* at 690.  The
Court further held that "a municipality cannot be held liable
*solely* because it employs a tortfeasor — or, in other words, a
municipality cannot be held liable under § 1983 on a *respondeat
superior* theory."  *Id.* at 691.  Instead, it determined that
"municipalities could be held liable only when an injury was
inflicted by a government's 'lawmakers or by those whose edicts
or acts may fairly be said to represent official policy.'"  *City
of St. Louis v. Praprotnik,* 485 U.S. 112, 121-22 (1988) (*quoting
Monell,* 436 U.S. at 694).

"A suit against an individual 'in his official capacity'
has been held to be essentially a suit directly against the

local government unit and can result in that unit's liability to respond to the injured party for his injuries." *Leach v. Shelby Cty. Sheriff*, 891 F.2d 1241, 1245 (6th Cir. 1989). The Supreme Court has stated that "[o]fficial-capacity suits [] 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham,* 473 U.S. 159, 165-66 (1985)(quoting *Monell*, 436 U.S. at 690 n.55). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* at 166 (citing *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985)). Therefore, "[b]ecause a suit under section 1983 against a defendant 'in his official capacity' is equivalent to a suit against the local government entity, provided that the entity receives notice and an opportunity to respond, the prudent course for a plaintiff who seeks to hold a local government entity liable for damages resulting from an allegedly unconstitutional action under 42 U.S.C. § 1983 would be to name in his pleadings the government entity itself." *Leach*, 891 F.2d at 1245.

Here, Moses has named as defendant the Shelby County Government. Moses's suit against the Mayor, the Sheriff of Shelby County, Allied Barton, and Fessenden in their official capacities, is, therefore, essentially, a suit against Shelby

16

County itself, which is also named as a defendant in this suit. *See id.* at 1245-46; *see also Petty v. Cnty. of Franklin,* 478 F.3d 341, 349 (6th Cir. 2007)("To the extent that [the plaintiff's Section 1983] suit is against [the sheriff] in his official capacity, it is nothing more than a suit against Franklin County itself."); *Dillingham v. Millsaps*, 809 F. Supp. 2d 820, 835 (E.D. Tenn. 2011)("To the extent that Plaintiffs have sued Sheriff Bivens, Deputy Millsaps, or Deputy McLemore, in their official capacities, that is nothing more than a suit against Monroe County.").

1. *Abstention*

The court should abstain from exercising jurisdiction over Moses's claims for injunctive relief. "*Younger v. Harris* and its progeny espouse a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." *James v. Hampton*, 513 F. App'x 471, 473-74 (6th Cir. 2013)(citing *Middlesex Cnty. Ethics Comm. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982)). "Thus, when a federal court suit deals with issues involved in a state proceeding, the federal court abstains until the conclusion of the state proceeding." *Id.* at 474. "*Younger* abstention is not a question of jurisdiction, but is rather based on 'strong policies counseling against the exercise of such jurisdiction.'" *O'Neill v. Coughlan*, 511 F.3d 638, 641 (6th Cir. 2008)(citing

*Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.,* 477 U.S. 619, 626 (1986)). Further, the *Younger* abstention doctrine may be raised *sua sponte* by the court or by the parties. *See id.* at 642; *Pethtel v. Tenn. Dep't of Children Servs.*, No. 3:10-CV-469, 2011 WL 5592853, at *3 (E.D. Tenn. Nov. 16, 2011).

A three-part test is applied to determine if abstention is appropriate. "The *Younger* abstention doctrine provides that a federal court should abstain from interfering in a state court action when (1) there is an ongoing state judicial proceeding, (2) the state proceeding implicates important state interests, and (3) there is an adequate opportunity in the state proceedings to raise constitutional challenges." *Graves v. Mahoning Cnty.*, 534 F. App'x 399, 406 (6th Cir. 2013)(citing *Fieger v. Cox,* 524 F.3d 770, 775 (6th Cir. 2008) & *Am. Family Prepaid Legal Corp. v. Columbus Bar Ass'n,* 498 F.3d 328, 332 (6th Cir. 2007)). If these three criteria are satisfied, the court should abstain from interfering "unless there is a showing of bad faith, harassment, or another extraordinary circumstance that makes abstention inappropriate." *Id.* (citing *Am. Family Prepaid Legal Corp.,* 498 F.3d at 332).

Here, the first condition, an "ongoing state judicial proceeding," is easily met because it is undisputed that at the time Moses filed the instant federal case on April 18, 2016, Moses had an ongoing civil case in state court against Shelby

County Sheriff Bill Oldham and Officers, Shelby County Homeland Security, and Allied Barton. *See* Complaint, Moses v. Shelby County Sheriff Bill Oldham & Officers, Shelby County Homeland Security, and Allied Barton Security Services LLC, CH-14-1316-3 (Tenn. Ch. C. Sept. 2, 2014). In the Chancery Court lawsuit, as in here, Moses alleged violations of her civil and constitutional rights based on allegations that the Shelby County Sherriff, SCSO officers, and Allied Barton prevented Moses from freely entering county buildings. *Id.* As explained *supra*, the suit against the Shelby County Sheriff and SCSO officers is a suit against the County itself, and thus, the County and Allied Barton are defendants in both lawsuits. Because Moses's Chancery Court case is under appeal, her state judicial proceeding is ongoing. *See Nimer v. Litchfield. Twp. Bd. Of Trs.*, 707 F.3d 699, 701 (6th Cir. 2013). Therefore, the first condition of the *Younger* abstention doctrine is met.

The second condition, "important state interests," is also satisfied because the state has an important interest in providing security in public buildings, particularly its courts, protecting its judges, and "in enforcing its criminal laws." *Cook v. Lamberth*, No. 3 09 0434, 2009 WL 1383341, at *1 (M.D. Tenn. May 15, 2009); *see also Cooper v. Parrish*, 203 F.3d 937, 954 (6th Cir. 2000)(stating that state criminal proceedings would likely involve important state interests). Indeed, the

state of Tennessee has an obligation to control access to all courthouses, a duty explicitly imposed on the county sheriff under Tenn. Code Ann. § 5-7-108(a)(1); *Fareed v. G4S Secure Sols. (USA) Inc.*, 942 F. Supp. 2d 738, 742 (E.D. Mich. 2013).

The third condition, "an adequate opportunity to raise constitutional challenges," is also easily met in this case. Moses can and did raise federal constitutional challenges to the actions of the Shelby County Sheriff and Allied Barton in the state proceedings in Chancery Court. *Cooper,* 203 F.3d at 954-55 (citing *Tennessee v. Draper,* 800 S.W.2d 489, 497 (Tenn. Crim. App. 1990)("Our courts have held that constitutional issues may be raised and considered at any stage of the proceedings.")). Moses may assert all of her federal claims regarding the constitutionality of the SCSO and Allied Barton escorting her in county buildings, specifically the Shelby County Courthouse, Juvenile Court, and the County Building at 201 Poplar, in her Chancery Court case. Indeed, the relevant inquiry is not whether the plaintiff raised her federal claims in the state court proceedings, but "whether state law clearly foreclosed her from so doing at the time she filed this lawsuit." *James v. Hampton*, 513 F. App'x 471, 475 (6th Cir. 2013).

Lastly, Moses's complaint alleges no bad faith, harassment or unusual circumstances sufficient to warrant federal intervention at this time. Even though Moses conclusorily

alleges that the "SCSO agents have absolutely no reasonable or legal justification they have just been instructed to harass Plaintiff by Debra Fessenden, the same attorney who spread untrue terrorist rumors and circulated internal memos that Plaintiff was sovereign citizen who squats in houses," Moses puts forth no facts to support this conclusory statement. (Compl. 6, ECF No. 1.) In short, Moses has not set forth any facts in her complaint that would suggest extraordinary circumstances. In fact, according to Judge McCraw's order denying injunctive relief in the Chancery Court proceedings, "the scrutiny brought upon Pamela Moses is the result of alleged security threats by Pamela Moses, whether they be true or untrue, that other members of the judiciary have perceived." Order Denying Injunction Relief 1-2, Moses v. Shelby County Sheriff Bill Oldham & Officer, Shelby County Homeland Security, and Allied Barton Security Services LLC, Docket No. CH-14-1316-3 (Tenn. Ch. Ct. Oct. 5, 2015).

The Sixth Circuit "has consistently dismissed federal claims based on the abstention doctrine when the plaintiff only requested equitable relief." *Clay Cnty. Manor, Inc. v. Luna*, No. 3-89-0608, 1990 WL 140464, at *4 (M.D. Tenn. June 13, 1990)(listing Sixth Circuit decisions dismissing claims based on the abstention doctrine). Here, Moses does not seek damages but only requests injunctive and declaratory relief. Therefore, it

is recommended that the court abstain from exercising jurisdiction under *Younger* and dismiss Moses's complaint against the Shelby County Government, Mayor Mark Luttrell, the Shelby County Sheriff, Debra Fessenden (in her official capacity), and Allied Barton. *See Willis v. Draper*, No. 2:09-CV-116, 2010 WL 1875704, at *1, *11, *13, *15, *19 (E.D. Tenn. May 10, 2010)(screening the complaint under 28 U.S.C. § 1915(e)(2) and dismissing it after finding it subject to the *Younger* doctrine); *Mosby v. Baity*, No. 07-2144, 2007 WL 2351596 (same); *see also Michel v. City of Akron*, 278 F. App'x 477, 478-79 (6th Cir. 2008)(affirming the district court's decision to abstain under *Younger* from adjudicating plaintiff's claim that the search warrant issued by the State violated his Fourth, Fifth, Sixth, and Fourteenth Amendment rights).[1]

    2.   *Failure to State a Claim*

---

[1]Furthermore, the doctrine of res judicata, or claim preclusion, "bars a second suit between the same parties or their privies on the same cause of action with respect to all the issues which were or could have been litigated in the former suit." *Lien v. Couch*, 993 S.W.2d 53, 56 (Tenn. Ct. App. 1998); accord *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981)("A final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."). Therefore, if Moses had not appealed the dismissal of her Chancery Court suit, or in the event she dismisses the appeal, or if the Court of Appeals upholds the ruling of the Chancery Court and Moses does not appeal, Moses's instant federal claims would be barred under the doctrine of res judicata.

In the alternative, Moses's claims against the County Defendants should be dismissed for failure to state a claim. As discussed herein, Shelby County cannot be held solely liable on a *respondeat superior* theory. Before a local government can be held liable for injuries under section 1983, whether the suit is pleaded as an official capacity suit or a suit against the local government, a plaintiff must show that her injuries were the result of some "policy or custom" attributable to the governmental entity. *Monell,* 436 U.S. at 690; *see also Graham*, 473 U.S. at 166 ("More is required in an official-capacity action, however, for a governmental entity is liable under § 1983 only when the entity itself is a 'moving force' behind the deprivation, . . . thus, in an official-capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law." (citations omitted)).

To sue Shelby County under § 1983, Moses must show either that an "official policy or custom actually serves to deprive an individual of his or her constitutional rights," *Gregory v. City of Louisville*, 444 F.3d 725, 752 (6th Cir. 2006), or that "such actions emanate from informal governmental custom," *Alman v. Reed*, 703 F.3d 887, 902 (6th Cir. 2013). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action

23

for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988)(quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-480 (1986)). When a § 1983 claim is made against a municipality, the court must analyze two distinct issues: (1) "whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the municipality is responsible for that violation." *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). Under the second prong, Moses must demonstrate that the municipal policy has a direct causal link to the alleged constitutional deprivation by (1) identifying the municipal policy or custom, (2) connecting the policy to the municipality, and (3) showing that her injury was caused by the execution of that policy. *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003). In sum, the municipal policy must be the "moving force" behind the alleged injury. *Id.* at 817.

Moses alleges that two different actions by the County Defendants constituted constitutional violations. First, Moses alleges that she suffered constitutional violations when the SCSO agents escorted her into county building. Specifically, Moses states that "the purpose of this action is to stop a pointless, baseless, and predetermined decision that has impaired and continues to impair the ability of Pamela Moses to access public buildings free from intimidation, humiliation,

detainment, harassment, and escorts from the Shelby County Sheriff Office." (Compl. 1, ECF No. 1.) Based on this assertion, Moses sets forth constitutional violations under the First, Fourth, Fifth, Eighth, Ninth, Tenth, and Fourteenth Amendments of the United States Constitution. (*Id.* at 8-9.)

As to the first prong of *Collins*, Moses has not sufficiently alleged that her harm was caused by a constitutional violation. *Collins*, 503 U.S. at 120. It is unclear what "predetermined decision" Moses refers to. To the extent the "predetermined decision" required the SCSO agents to escort Moses in county buildings, the SCSO agents are permitted by law to do so. *See* Tenn. Code Ann. § 8-8-201(a)(2)(stating that the duties of SCSO agents include maintaining order and obeying the orders and directions of the court). Moses has simply not included sufficient facts for the court to infer that a constitutional violation has occurred.

As to the second prong of *Collins*, Moses does not allege that the County Defendants have acted pursuant to a policy or custom of the County that serves to deprive Moses of her constitutional rights. Moses does not include any facts related to a municipal policy or custom beyond her singular experience. Moses does not identify such custom or policy nor include facts to show that her injury is caused by the execution of such custom or policy. Moses cannot base her claims against Shelby

County solely on the County Defendants' conduct without alleging that the County acted pursuant to an officially executed policy or tolerated a custom that resulted in the depravation of Moses's constitutionally protected rights.

Second, Moses alleges that SCSO agents broke into her house twice and performed searches without search warrants. (Compl. 4, ECF No. 1.) Even assuming that Moses has suffered a constitutional violation under *Collins's* first prong, she has not sufficiently alleged that the County is responsible for the violation. Again, Moses does not allege that the County acted pursuant to an officially executed policy of engaging in unconstitutional searches or tolerated such a custom. Therefore, the court recommends that Moses's § 1983 official capacity claims against Shelby County and the County Defendants be dismissed.

The defendant Allied Barton is a private security company that conducts internal checkpoint security for all county buildings. (*See* Compl. 4, ECF No. 1.) Section 1983 is only applicable to private parties where the actions taken "can fairly be seen as state action." *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982). A private entity has acted under color of state law when it "exercise[s] powers which are traditionally exclusively reserved to the state." *Bell v. Mgmt. & Training Corp.*, 122 F. App'x 219, 222 (6th Cir. 2005). Examples are when

private entities hold elections or operate prisons. *Id.* (citing *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992) & *West v. Atkins*, 487 U.S. 42, 54-56 (1988)). The appropriate § 1983 inquiry for a government contractor defendant is similar to that for a municipality. "Like a municipality, a government contractor cannot be held liable on a *respondeat superior* theory." *Johnson v. Karnes,* 398 F.3d 868, 877 (6th Cir. 2005) (citing *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996)). "The difference, however, is that a private contractor is liable for a policy or custom *of that private contractor,* rather than a policy or custom of the municipality." *Id.* (citations omitted); *see also O'Brien v. Michigan Dep't of Corr.,* 592 F. App'x 338, 341 (6th Cir. 2014).

Assuming here that Allied Barton is liable as a state actor under § 1983, Moses has made no allegations in her complaint that Allied Barton's official policies or customs resulted in an injury to her. Moreover, it is unclear whether Moses's injury is due to constitutional violations. Moses's alleged injury is that Allied Barton escorts Moses when she is in public buildings. (Compl. 1, 5, ECF No. 1.) Moses has failed to include any facts to indicate that Allied Barton's conduct, which she alleges is pursuant to a "predetermined decision," (*Id.* at 1), constitutes a constitutional violation.

For these reasons, even if the court were to not abstain from exercising jurisdiction over Moses's claims under the *Younger* abstention doctrine, the court recommends that Moses's official capacity claims against the County Defendants and Allied Barton be dismissed for failure to state a claim upon which relief may be granted.

E.    Moses's Claims Against Phillips

As to Phillips, Moses's sole allegation is that "Assistant District Attorney Bryce Phillips initiated bogus arrest warrants for Plaintiff's arrest stating she was entering a building unescorted." (Compl. 2, ECF No. 1.) By its terms, 42 U.S.C. § 1983 authorizes suits against state officials for injunctive relief. "[A] state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 n.10 (1989); *see also Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102-3 (1984)("[W]hen a plaintiff sues a state official alleging a violation of federal law, the federal court may award an injunction that governs the official's future conduct." (citing *Edelman v. Jordan*, 415 U.S. 651 (1974))).[2]

_____

[2]The Supreme Court explained in *Pennhurst* that such a suit "would not be one against the State since the federal-law

28

Phillips is not immune from injunctive relief, *see Pulliam v. Allen*, 466 U.S. 522, 536-38 (1984) & *In re Smith*, 349 F. App'x 12, 18 (6th Cir. 2009), however, Moses is not entitled to this relief based on her pleadings. As an initial matter, Moses has not pled a claim for injunctive or declaratory relief against Phillips. In her prayer for relief, Moses does not seek any prospective or injunctive or declaratory relief against Phillips. (*See* Compl. 10, ECF No. 1.) Further, to obtain injunctive relief, Moses must show that there is no adequate remedy at law and a serious risk of irreparable harm. *Pulliam*, 466 U.S. at 537; *Marin v. Cleveland Clinic*, No. 1:09CV2090, 2010 WL 359699, at *7 (N.D. Ohio Jan. 29, 2010). Moses's sole assertion against Phillips is conclusory, unsupported by any facts, and implausible to state that Phillips deprived Moses of rights secured by the Constitution or federal laws. Moses has not alleged when she was arrested, has not included the circumstances of her arrest, or explained why the arrest warrants initiated by Phillips were bogus. Nor has Moses demonstrated that she has no adequate remedy under Tennessee law to challenge the "bogus arrest warrants" or that there is a risk of future irreparable harm if injunctive relief is not granted. *See Ritchey, ex rel. Ritchey v. Bernard*, 178 F.3d 1296, 1999 WL

---

allegation would strip the state officer of his official authority." *Pennhurst*, 465 U.S. at 103.

115489, at *2 (6th Cir. Feb. 9, 1999)(affirming dismissal under Rule 12(b)(6) because plaintiff had failed "to allege or demonstrate an inadequate remedy at law and a serious risk of irreparable harm" in order to be granted equitable relief for prosecutor's actions); *Marin*, 2010 WL 359699, at *7-8 (dismissing *sua sponte* pursuant to 28 U.S.C. § 1915(e) for same reasons).  Therefore, the court recommends that Moses's claims against Phillips be dismissed.

F.   Moses's Claims Against Fessenden Individually

The remaining defendant Fessenden, who is the legal advisor to the Shelby County Sheriff, is sued in both her personal and official capacity.  The court has already recommended dismissal of the official-capacity claims against Fessenden.  To establish personal liability in a § 1983 action, Moses need not establish a connection to governmental policy or custom — "it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right."  *Hafer v. Melo*, 502 U.S. 21, 25 (1991)(citations and internal quotations omitted).

As to Fessenden, Moses alleges that "the unlawful and unconstitutional actions of the Defendants . . . began when Shelby County [Attorney] Debra Fessenden made unfounded allegations, rumors, and circulated memos that Pamela Jeanine Moses also known as P. Moses . . . was . . . a dangerous

'*Sovereign Citizen*, who squats in houses.'". (Compl. 2, ECF No. 1.) She further alleges that:

> It was determined that Attorney Debra Fessenden acted
> unethically on behalf of her close friend Phyllis
> Gardner. Ms. Fessenden had instructed different high-
> ranking officers to mistreat [Moses] upon site and to
> pass the order to other low ranking officers. . . .
> She recently had a SCSO letter delivered to my family
> residence and placed in the mailbox to intimidate and
> frighten my family.

(*Id.* at 5.) Moses further alleges as to Fessenden that:

> SCSO agents . . . have just been instructed to harass
> Plaintiff by Debra Fessenden, the same attorney who
> spread untrue terrorist rumors and circulated internal
> memos that Plaintiff was a sovereign citizen who
> squats in houses. The Defendant's reasons are
> personal and retaliatory in a nature on behalf of
> Phyllis Gardner because of statements that were
> allegedly made against her on social media. Such "Do
> Not R-elect or Bring Civil Rights Charges Against
> Phyllis Gardner", this being a violation of
> Plaintiff's freedom of speech.

(*Id.* at 6.)

Moses sets forth seven separate causes of action claiming that all the Defendants collectively, including Fessenden individually, violated the First, Fourth, Fifth, Eighth, Ninth, Tenth, and Fourteenth Amendments to the U.S. Constitution. Moses allegations as to Fessenden, however, do not plausibly plead that defendant Fessenden deprived her of rights secured by the Constitution.

1. *Moses's First Claim – First Amendment*

For her first claim, Moses asserts "The Defendant's abridging Plaintiff's freedom of speech, or of the press, or the

31

right of the people to petition the Government for a redress of grievances constituted a violation under the First Amendment." (Compl. 8, ECF No. 1.)   The First Amendment confers individuals the "freedom to express disagreement with state action, without fear of reprisal based on the expression." *Barnes v. Wright*, 449 F.3d 709, 717 (6th Cir. 2006)(internal quotation omitted)(citing *McCurdy v. Montgomery Cnty.*, 240 F.3d 512, 520 (6th Cir. 2001)).   "[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out."   *Hartman v. Moore*, 547 U.S. 250, 256 (2006)(citing *Crawford-El v. Britton*, 523 U.S. 574, 592 (1998)). "[W]hen nonretaliatory grounds are in fact insufficient to provoke the adverse consequences, we have held that retaliation is subject to recovery as the but-for cause of official action offending the Constitution."   *Id.* (citing *Crawford-El*, 523 U.S. at 593); *see also Greene v. Barber*, 310 F.3d 889, 897 (6th Cir. 2002)("[W]here constitutionally protected speech is a 'motivating factor' in a governmental action adverse to the plaintiff, the adverse action is unconstitutional . . . *unless the same action would have been taken 'even in the absence of the protected conduct.'"* (quoting *Mount Healthy Bd. of Ed. v. Doyle*, 429 U.S. 274, 287 (1977))); *McKinney v. Fields*, No. 07-CV-10652, 2009 WL 816886, at *5 (E.D. Mich. Mar. 27, 2009).

Thus, in order to succeed on a claim of retaliation, a plaintiff must demonstrate that: (1) she engaged in protected conduct; (2) an adverse action was taken against her that would "deter a person of ordinary firmness from continuing to engage in that conduct"; and (3) the adverse action was motivated by the protected conduct. *O'Brien v. Michigan Dep't of Corr.*, 592 F. App'x 338, 343 (6th Cir. 2014)(citing *Thaddeus-X v. Blatter,* 175 F.3d 378, 394 (6th Cir. 1999) (en banc)).

In support of her First Amendment claim, Moses conclusorily alleges that Fessenden retaliated against her because of statements Moses allegedly made against Phyllis Gardner on social media, such as "Do Not R-elect or Bring Civil Rights Charges Against Phyllis Gardner." (Compl. 6, ECF No. 1.) As to the second element, Moses alleges that Fessenden took the adverse action of instructing SCSO agents to harass Moses, "spread untrue terrorist rumors and circulated internal memos that [Moses] was a sovereign citizen who squats in houses." (*Id.*) Fessenden, however, "cannot be held liable . . . absent a showing that [she] was personally involved in some manner in the [alleged unlawful conduct]." *Velez v. Cuyahoga Metro. Hous. Auth.*, No. 1:13CV1022, 2014 WL 847406, at *4 (N.D. Ohio Mar. 3, 2014)(citations omitted). There are no factual allegations, however, that Fessenden has authority to instruct SCSO agents to behave a certain way. Moses cannot hold Fessenden liable under

a supervisory liability if she has no supervisory authority over SCSO agents. *See Leach*, 891 F.2d at 1246 (finding supervisory liability when a supervisor "directly participated in or encouraged the alleged deprivations").

Even assuming that Fessenden took any adverse actions against Moses, there are no factual allegations indicating that such action was motivated, even in part, by Moses's exercise of her First Amendment rights. Moses does not allege that she ever spoke with Fessenden before the alleged retaliation, when she "spoke out" on social media against Judge Gardner, or even that Fessenden was aware of Moses's speech on social media. Moses conclusorily alleges that Fessenden acted on behalf of her close friend Phyllis Gardner; however, there are no direct or circumstantial facts alleged supporting Moses's claims of retaliatory motive.

Moreover, as Judge McCraw has noted, any adverse consequences that Moses has experienced are the result of nonretaliatory grounds, such as, "security threats by Pamela Moses, whether they be true or untrue, that other members of the judiciary have perceived." Order Denying Injunction Relief 1-2, Moses v. Shelby County Sheriff Bill Oldham & Officer, Shelby County Homeland Security, and Allied Barton Security Services LLC, Docket No. CH-14-1316-3 (Tenn. Ch. Ct. Oct. 5, 2015). Therefore, the court recommends that Moses's § 1983 claim

against Fessenden individually arising under the First Amendment be dismissed for failure to state a claim upon which relief may be granted.

2. *Moses's Second Claim – Fourth Amendment Unconstitutional Search and Seizure*

For her second claim, Moses states that "the detention and interrogation of [her] by Defendant's agents constituted an unreasonable search and seizure under the Fourth Amendment . . . and the absence (sic) issuance of warrants (sic) an entry on 12-18-2014 and 12-21-2014 into the family residence to search the property and destroy the doors and ransack premises constituted a violation of the Fourth Amendment." (Compl. 8, ECF No. 1.) Again, Moses's allegations fail to state a claim against Fessenden. The complaint lacks any factual allegations that Fessenden participated in any way in the searches of Moses's property. At most, Moses alleges in a conclusory fashion that Fessenden instructed SCSO officers to mistreat and harass Moses. These allegations are insufficient to plausibly implicate Fessenden with the allegedly unconstitutional searches and seizures of Moses. Therefore, the court recommends that Moses's § 1983 claim against Fessenden individually for unconstitutional search and seizure under the Fourth Amendment be dismissed.[3]

---

[3]Further, any claim Moses has against Fessenden under § 1983 for unlawful entry into her home on December 18, 2014 is barred by the statute of limitations and should be dismissed with

3.  *Moses's Third Claim - Fifth Amendment Due Process Violation*

For her third claim, Moses asserts that "[t]he Defendants actions did deprive of plaintiff life, liberty or property, without due process of law." (Compl. 8, ECF No. 1.) The Fifth Amendment to the United States Constitution declares that no person shall "be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation." U.S. Const. amend. V. The Fifth Amendment limits the power of the federal government and the Fourteenth Amendment secures the application of the Fifth Amendment to the state governments. *Malloy v. Hogan,* 378 U.S. 1, 8, 26 (1964)("Due process of law is secured against invasion by the federal Government by the Fifth Amendment and is safeguarded against state action in identical words by the Fourteenth."). Here, Fessenden did not act on behalf of the federal government and thus she cannot incur liability under the Fifth Amendment. *Hockenberry v. Vill. of Carrollton*, 110 F. Supp. 2d 597, 603 (N.D. Ohio 2000). Moses's due process claim is better construed as brought under the Fourteenth Amendment

---

prejudice. This time period is the same statute of limitations period that the applicable state law provides for personal injury torts, which is one year in Tennessee. *Foster v. State*, 150 S.W.3d 166, 168 (Tenn. Ct. App. 2004) (applying the one-year statute of limitations from Tenn. Code Ann. § 28-3-104(a) in a § 1983 claim); *see also Harper v. Gov't*, No. 15-2502-STA-CGC, 2016 WL 737947, at *2 (W.D. Tenn. Feb. 23, 2016).

which is discussed below.   Therefore, the court recommends that Moses's § 1983 claim against Fessenden individually for violation of the Fifth Amendment be dismissed.

4.   *Moses's Fourth, Fifth, and Sixth Claims – Violations of the Eighth, Ninth, and Tenth Amendment*

In her fourth, fifth, and sixth claims for relief, Moses alleges violations of the Eighth, Ninth, and Tenth Amendments respectively.   As discussed below, these amendments are clearly irrelevant and fail to state a claim against Fessenden.   For her fourth claim, Moses asserts "[t]he Defendant's action did inflict cruel and unusual punishment on Plaintiff and violated the Eighth Amendment."   (Compl. 9, ECF No. 1.)   The Eighth Amendment to the U.S. Constitution prohibits cruel and unusual punishment.   U.S. Const. amend. VIII.   Only those convicted of crimes can bring claims under the Eighth Amendment.   *Bell v. Wolfish,* 441 U.S. 520, 535 (1979); *Ingraham v. Wright,* 430 U.S. 651, 664 (1977); *Roberts v. City of Troy,* 773 F.2d 720, 722-23 (6th Cir. 1985).   There are no allegations in the complaint of any crime upon which Moses bases her Eighth Amendment claim. Nor are there any allegations that Fessenden inflicted cruel and unusual punishment on Moses.

For her fifth claim, Moses states that "[t]he Defendant's action did deny and disparage Plaintiff's rights which are retained by the people in violation of the Ninth Amendment." (Compl. 9, ECF No. 1.)   "[T]he [N]inth [A]mendment does not

confer substantive rights in addition to those conferred by other portions of our governing law." *Gibson v. Matthews*, 926 F.2d 532, 537 (6th Cir. 1991). "Rather, the Ninth Amendment was adopted to ensure that the explicit enumeration of rights in the Constitution did not implicitly deny the existence of unenumerated fundamental rights." *Hockenberry*, 110 F. Supp. 2d at 604; *see also Gibson*, 926 F.2d at 537. Therefore, Moses's Ninth Amendment claim is meritless and should be dismissed.

For her sixth claim, Moses states that "[t]he Defendant's action did act upon fraud and misrepresented its role as Homeland Security solely to deny Plaintiff's rights . . . [t]he detention and interrogation of Plaintiff by Defendants was conducted pursuant to a Homeland Security policy, practice or custom that exceeds Defendant's statutory right to protect the court by escorting her and following her in the bathroom." (Compl. 9, ECF No. 1.) These allegations are clearly targeted to the SCSO and Allied Barton officers. Moses alleges elsewhere in the complaint that the SCSO and Allied Barton officers "declare[d] authority as a component of the Department of Homeland Security." (*Id.* at 4, 5.) Moses sets forth no facts against Fessenden in this claim. Moreover, the Tenth Amendment, which states that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people," does

not confer any substantive rights. U.S. Const. amend. X. Therefore, Moses's Tenth Amendment claim against Fessenden in her individual capacity should be dismissed.

> 5. *Moses's Seventh Claim – Fourteenth Amendment Due Process and Equal Protection Claims*

For her seventh claim, Moses alleges that "[t]he Defendants did violate Plaintiff's rights by its discriminatory practice . . . did enforce laws which violate the privileged or immunities of Plaintiff Pamela Moses . . . and deprived her of life, liberty, or property without due process of law[,] and denied Plaintiff's equal protection of the state and Federal laws." (Compl. 9, ECF No. 1.) The Fourteenth Amendment forbids a state from depriving any person of life, liberty, or property without due process of law. U.S. Const. amend. XIV, § 1. The Due Process Clause contains "a substantive component that bars certain arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to implement them.'" *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)(quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)). The Due Process Clause also encompasses another type of protection, a guarantee of fair procedure. Thus, a § 1983 action may be brought for a violation of procedural due process. *Id.* at 125-26. In her seventh claim for relief, Moses specifically states that the Defendants "deprived her of life, liberty, or property, without due process of law." (Compl. 9, ECF No. 1.) In the body of the complaint,

Moses alleges that she was deprived of a liberty interest because she "was not free to move about" without escorts from SCSO and Allied Barton while at various county buildings, and that she "has received no Due Process in regards to these escorts." (*Id.* at 5-6.) Therefore, the court construes Moses's Fourteenth Amendment claim as a procedural due process claim.

"The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972). In procedural due process claims, "the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional." *Zinermon*, 494 U.S. at 125 (quoting *Parratt v. Taylor*, 451 U.S. 527, 537 (1981)). Rather, it is the deprivation of the interest *without due process of law* that is unconstitutional. *Id.* In other words, "[t]he constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process." *Id.* at 126.

Therefore, to state a claim for a violation of procedural due process, the plaintiff must allege that: (1) she had a property or liberty interest of which she was deprived; and (2) the state did not afford her adequate procedural rights prior to

depriving her of the interest.  *EJS Properties, LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012)(citing *Women's Med. Prof'l Corp. v. Baird,* 438 F.3d 595, 611 (6th Cir. 2006)); *Smith v. Jefferson Cnty. Bd. of Sch. Comm'rs*, 641 F.3d 197, 216 (6th Cir. 2011)(citing *Leary v. Daeschner*, 228 F.3d 729, 741 (6th Cir. 2000)).  Liberty interest denotes "freedom from bodily restraint . . . the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized . . . as essential to the orderly pursuit of happiness by free men."  *Roth*, 408 U.S. at 572 (citation and internal quotation marks omitted).

Moses's allegations are insufficient to plausibly allege that Fessenden deprived Moses of her liberty interest without due process.  First, Moses has not plausibly shown that she suffered a deprivation of her liberty.  The Tennessee Code provides that the sheriff, or some other specially appointed person, is charged with protecting county courthouses.  *See* Tenn. Code Ann. § 5-7-108(a)(1).  The duties of such officers include maintaining order and obeying the orders and directions of the court.  Tenn. Code Ann. § 8-8-201(a)(2).  Moses has not plausibly alleged that the officers have somehow exceeded their

lawful duties by escorting her in county buildings. She has not alleged that she was in any way seized or restrained; therefore, she has not sufficiently pled a deprivation of her liberty interest.

Further, even assuming that Moses's liberty interest was deprived, it is unclear how Fessenden is responsible for the alleged liberty deprivation. Moses's allegations that Fessenden instructed SCSO agents to harass her "on behalf of her close friend Phyllis Gardner," are entirely speculative and implausible. Moses has included no facts to plausibly allege such a nexus. Furthermore, there are no facts alleged that indicate as legal advisor to the Shelby County Sheriff, Fessenden has authority to instruct SCSO and Allied Barton agents to harass Moses, and therefore she cannot be held liable under a supervisory liability theory. *See Leach*, 891 F.2d at 1246(finding supervisory liability under § 1983 when an actual supervisor "directly participated or encouraged the alleged deprivations"). Therefore, to the extent Moses purports to set forth a procedural due process claim against Fessenden, the court recommends that such claim be dismissed for failure to state a claim upon which relief may be granted.

In her seventh claim for relief, Moses also claims that she was denied "equal protection of the state and Federal laws." (Compl. 9, ECF No. 1.) The Equal Protection Clause of the

Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class.'" *Purisch v. Tennessee Tech. Univ.*, 76 F.3d 1414, 1424 (6th Cir. 1996)(quoting *Henry v. Metropolitan Sewer Dist.*, 922 F.2d 332, 341 (6th Cir. 1990)). "The basis of any equal protection claim is that the state has treated similarly-situated individuals differently." *Silver v. Franklin Twp. Bd. of Zoning Appeals*, 966 F.2d 1031, 1036 (6th Cir. 1992).

Moses does not allege that Fessenden discriminated against her due to her membership in a protected class. It is unclear, moreover, what protected class Moses is a member of. There are no allegations indicating how Moses was treated differently from similarly-situated individuals. Moses's sole mention of the Equal Protection Clause is insufficient to plausibly allege a claim against Fessenden. Therefore, the court recommends that Moses's equal protection claim against Fessenden in her individual capacity be dismissed.

To sum, "conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under section 1983." *Lillard v. Shelby Cty. Bd. of Educ.*, 76 F.3d

716, 726 (6th Cir. 1996)(citing *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986)). The complaint must set forth some factual basis for § 1983 claims, either "direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Id.* (quoting *Allard v. Weitzman (In re DeLorean Motor Co.),* 991 F.2d 1236, 1240 (6th Cir. 1993)). As discussed herein, Moses's allegations against Fessenden in her personal capacity are vague and difficult to apply to her various constitutional claims. Moses's claims against Fessenden are solely premised on her conclusory assertion that "[i]t was determined that Attorney Debra Fessenden acted unethically on behalf of her close friend Phyllis Gardner." (Compl. 5, ECF No. 1.) Based on this attenuated connection, Moses seeks to hold Fessenden liable for alleged violations by SCSO and Allied Barton agents. In fact, none of Moses's prayers for relief can be applied to Fessenden. (*See id.* at 10.) Fessenden cannot be enjoined from "authorizing or conducting escorts" because she does not hold such power. Further, Fessenden cannot be enjoined from participating in searches of Moses's property because she has no power to initiate or issue warrants or otherwise engage in a property search.

Lastly, as discussed above, to obtain injunctive relief against a defendant, Moses must show that there is no adequate

remedy at law and a serious risk of irreparable harm.  *Pulliam*, 466 U.S. at 537.  Moses has "failed to allege [] an inadequate remedy at law and a serious risk of irreparable harm if the equitable relief sought is not granted."  *Ritchey*, 1999 WL 115489, at *2.  Because Moses's claims against Fessenden in her individual capacity are meritless, she is not entitled to injunctive or any other form of relief.

### III.    RECOMMENDATION

For the foregoing reasons, it is recommended that the court abstain from exercising jurisdiction over Moses's claims against the County Defendants and Allied Barton under the *Younger* abstention doctrine, or, in the alternative, that Moses's claims against these defendants be dismissed *sua sponte* for failure to state a claim.  It is further recommended that Moses's claims against Phillips and Fessenden in her personal capacity be dismissed *sua sponte* for failure to state a claim.

Respectfully submitted this 21st day of June, 2016.


s/ Diane K. Vescovo_____
DIANE K. VESCOVO
CHIEF UNITED STATES MAGISTRATE JUDGE




NOTICE

Within fourteen (14) days after being served with a copy of this report and recommended disposition, a party may serve and file written objections to the proposed findings and

45

recommendations. A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Failure to file objections within fourteen (14) days may constitute a waiver of objections, exceptions, and further appeal.